Irving H. Saypol, J.
The plaintiff wife in an action on a separation agreement and for support seeks leave to amend her complaint to assert a sixth cause of action. The motion is granted.
Absent a showing of prejudice, leave to amend is freely granted. Although contending that the plaintiff has been dilatory in asserting this sixth cause of action, the defendant wholly fails to indicate how that delay prejudices his ability to defend. The claim of delay will not bar the requested amendment. However, leave to amend is to be conditioned on a demonstration that the proposed complaint is legally sufficient (East Asiatic Co. v Corash, 34 AD2d 432).
Under the separation agreement between the parties, the support to be paid to the plaintiff is 30% of the defendant’s adjusted taxable income, as that term is defined in the agreement. That definition excluded from adjusted taxable income capital gains income, charitable contributions (up to 20% of gross income) and tax-exempt interest. Because of tax sheltered income, tax losses and other deductions, the defendant had no adjusted taxable income for several years, and very low adjusted taxable income for other years. The proposed complaint alleges that in each of the years 1969, 1970 and 1973, when the defendant’s ordinary and capital gains income was $1,574,000, $588,000 and $242,000 respectively, the defendant paid the plaintiff nothing. In 1971 and 1972 when his ordinary and capital gains income was $543,000 and $472,000, he paid $31,000 and $6,000 respectively. Thus in the five years *479 1969-1973 inclusive, the defendant had ordinary and capital gains income of $3,419,000; the plaintiff received $37,000. The complaint alleges that in the six years prior to 1969, the annual support paid to the plaintiff averaged a little over $47,000, although defendant’s average gross annual income was $1,140,000. The proposed sixth cause of action is based on the plaintiffs claim that because the agreement resulted in reducing the plaintiffs support to zero or minimal amounts, it is invalid.
The courts ordinarily will not interfere with the terms of support contained in a separation agreement. However, the court must consider the explicit provisions of section 5-311 of the General Obligations Law which prohibit a husband and wife from contracting to relieve the husband from his obligation of support.
The separation agreement here measures the' defendant’s continuing obligation of support in terms of a definition of income which excludes capital gains, interest from tax exempt investments, and charitable contributions (up to 20% of his adjusted gross income). On its face, it is not a contract to relieve the defendant from his obligation of support. In operation, however, and entirely within the control of the defendant, the manipulation of income, perfectly proper under the Federal Internal Revenue Code can become, instead of a shield against taxes, a sword against this 68-year-old plaintiffs right to a decent level of support commensurate with the defendant’s real, spendable income.
Many precedents bar the use of subterfuge or device to effect a husband’s release from his obligations; they deal with many different methods (Tirrell v Tirrell, 232 NY 224 [lump sum plus 2 years]; Kyff v Kyff, 286 NY 71 [lump sum]; Haas v Haas, 298 NY 69 [support conditioned on noncompetitive business restriction]; Rubinfeld v Rubinfeld, 264 App Div 888 [support limited to a period of years]).
The Federal Government has long utilized the income tax not only as its prime source of revenue, but, importantly, as a means of implementing national, economic and social policy. To encourage investment in oil exploration, investment which in other industries is treated as capital investment is treated in oil exploration as expense to be written off against income. To encourage construction ordinary income is convertible to long term capital gains. To encourage investment in local improvements, the sovereign immunity enjoyed by the States *480 is extended to toll road authorities, bridge authorities, housing authorities and a multitude of other local agencies. To encourage philanthropy, charitable contributions are measured by their current value rather than acquisition cost. The list is long and need not be here catalogued.
None of the cases cited above or in the briefs deal with a situation where support is defeated or drastically reduced because of a husband’s otherwise proper use of the Internal Revenue Code. Surely the Federal policies of encouraging or channeling investment and of favoring philanthropy may not be used to render a wife destitute. Intended or not, the agreement as implemented allegedly falls within the prohibition of the statute and the stricture set forth in Haas v Haas (298 NY 69, 72, supra): "However artful the terms of the agreement, however veiled the design to terminate the husband’s obligation, contrary to the mandate of section 51, the attempts are doomed to failure.”
In recognizing the legal sufficiency of the proposed sixth cause of action, the court does not pass upon the propriety of the alternative forms of relief requested as to that cause of action. Whether the agreement is invalid, ought to be reformed or differently implemented is an issue that must await proof of the relevant facts, not only in support of the necessary allegations of the cause of action, but also relating to the needs of the plaintiff and the actual means of the defendant.
The defendant has opposed this amendment on additional grounds. His contention that a previous stipulation bars the amendment is logically inconsistent. If the sixth cause of action is legally sufficient, an agreement not to plead it would effect an escape from the defendant’s obligation of support, a violation of the statute. The stipulation, itself a contract, may not be a bar to pleading this sixth cause of action.
The defendant’s contention that the Statute of Limitations bars the cause of action is also without support. There is no claim that the separation agreement was void, ab initio, rather that its implementation has only relatively recently resulted in a violation of statute. Walsh v Andorn (33 NY2d 503), cited by the defendant, is not in point. There, the right to the pension accrued at a particular point in time, and at that point in time the basis for, and the amount of, the pension was determined. Here, not only is the amount of support annually variable, but more importantly the obligation of support underlying the agreement is one which under *481 the statutes and as a matter of public policy is continuing and ongoing. The Statute of Limitations may bar claims for particular, ancient years; it will not bar the underlying basic claim itself.
The defendant also contends that the decision in this case by Justice Korn (Sup Ct, New York County, March 24, 1975; April 11, 1975, affd 50 AD2d 550) is the law of the case and bars the plaintiff’s proposed sixth cause. The court does not agree. The first cause of action which was dismissed by Justice Korn involved the deduction of the amounts the defendant was required to pay as "alimony” to his first wife from his adjusted gross income. The plaintiff claimed these payments ought not be allowed because the former wife established a trust fund with those payments for the limited benefit of herself with a remainder interest to the defendant’s daughter. The court held that the acceptance by the Internal Revenue Service of the modification as a support deduction was binding on the plaintiff. There is no question that those payments whether made directly to the defendant’s first wife or to the trust fund were moneys required to be expended by the defendant and not available to him for any other purpose. More importantly, at the time this agreement was executed, that arrangement was already in effect and the plaintiff knew or should have known of its existence. The third cause of action also dismissed by Justice Korn challenged the defendant’s deduction of interest paid on tax deficiencies. The court held that since the Internal Revenue Service allowed the deduction, the plaintiff was bound by the provisions of the separation agreement which made the Internal Revenue Service the auditor-arbitrator of permissible deductions.
Significantly, neither of these deductions is alleged to have resulted in the reduction of support to zero or minimal levels.
The defendant further contends that the plaintiff, having accepted "substantial benefits” under the agreement, should be precluded now from "arguing that she is not bound by” it and that she "is not entitled both to challenge part of the Agreement and to keep the rest of the Agreement in effect”. What constitutes "substantial benefits” depends on who is giving and who receiving them. Average support of $7,400 a year for five years may sometimes be substantial, but where, as here alleged, a husband had an average income of $783,000 a year, $7,400 on its face may be less than substantial.
The argument that the plaintiff is barred from her claim by *482 acceptance of "benefits” under the agreement is specifically overruled by the results in each of the cases cited, supra. In none was the payment theretofore received by the wife a bar to her claim, nor her tender of a return a condition precedent. The obligation of support imposed by the State underlies any agreement for support by the parties. The tender of refund, in addition to being impossible in the instant case, in part by reason of the minimal support over the last five years, would mean that the defendant would have paid nothing by way of support in the 13 years since the agreement was executed — a violation of the statute. Secondly, there is no claim here that the agreement was void, ab initio, but rather that the defendant’s use of its provision coupled with the Federal tax policies resulted in no support or scant support for certain years. It is the plaintiff’s contention, here recognized as correct, that no agreement is valid if it results in a husband’s escape from the statutory obligation of support in accordance with his means.
It is one thing for the parties to fix support by a supposedly impartial formula, neutrally audited, so as to avoid future contention and dispute; it is quite another for that agreement to enable one party, at whim or caprice, as alleged, to reduce a fair, though flexible support, to levels inconsistent with the statutory obligation to support.